

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACINTO TORRES, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | 3-00CV1806-D |
| | § | |
| ASSOCIATES FINANCIAL | § | |
| SERVICES CO., INC., | § | |
| | § | |
| DEFENDANT | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Jacinto Torres ("Torres") files his Original Complaint against Defendant Associates Financial Services Co., Inc. ("Associates"), and states the following:

### Jurisdiction

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The Court has jurisdiction over Torres's claims under 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981a, and 28 U.S.C. §§ 1331 and 1343.

2. Torres has complied with all jurisdictional prerequisites for filing this suit. Torres filed a charge with the Equal Employment Opportunity Commission on May 18, 2000. The EEOC assigned it Charge No. 310A01521. Torres received a notice of his right to sue from the EEOC on May 18, 2000.

### Parties

3. Torres is an individual and a citizen of the United States of America. He resides in

Arlington, Tarrant County, Texas. At all times relevant to this action Torres is and was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

4. Defendant Associates Financial Services Co., Inc. is incorporated under the laws of the State of Delaware and has its corporate headquarters in Irving, Texas. Associates Financial Services Co., Inc. is a diversified financial services company that provides consumer finance, commercial leasing and finance, credit cards, insurance and related services. The Defendant is and was at all times relevant to this action an "employer" engaged in commerce as that term is defined in 42 U.S.C. § 2000e(b).

### Venue

5. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

### Material Facts

6. Torres's date of birth is May 3, 1959 and he is presently forty-one years of age. Torres's race is Hispanic, his national origin is Mexico, and he is a citizen of The United States of America.

7. In June, 1987, Ed Wooton, Associates Senior Vice-President, retired, hired Torres as a Collector to collect charged-off consumer loans.

8. Torres broke collection records in the Asset Management Unit (the "AMU"), and was featured in the Winter 1992 edition of The Associates Magazine: "Jay Torres is a good collector. A very good collector. So far this year, he's collected more money from delinquent accounts than any other Associates collector in the nation."

9. Torres excelled in volunteerism during his career at The Associates. Torres was recognized as Volunteer of the Year for 1993 for the entire Associates company. Torres was also frequently

**Plaintiff's Original Complaint and Jury Demand - Page 2**

recognized for external volunteer activities, as a representative of the Associates.

10. On or about March, 1994, Torres was transferred to what was then known as Ford Consumer Finance to handle charged-off real estate accounts.

11. In 1997, Torres received a fully satisfactory Employee Appraisal and Review from Becky Duell, Team Leader for Ford Consumer Finance. In 1997, Ford Consumer Finance became known as Associates Home Equity Services.

12. From early 1998 until Torres's employment was terminated October 1, 1999, Robert King ("King") and Penny Weason ("Weason") supervised Torres. Both are white. Neither King nor Weason had significant experience handling real estate accounts, yet Weason was hired to manage the real estate collections department of which Torres was a member, and King was hired in part to supervise Weason.

13. Both King and Weason mimicked Torres's accent during the time Torres worked under King.

14. From March until May of 1998, Torres held several meetings with Leon Potter ("Potter"), King's supervisor, about a possible promotion of Torres to management. Torres was not promoted.

15. On March 6, 1998, Torres received a fully satisfactory performance appraisal from King.

16. On November 25, 1998, Torres received an outstanding performance appraisal.

17. On or about May 24, 1999, King called Torres to Sandy Hildreth's ("Hildreth") office and asked that Torres sign a mostly blank disciplinary form that was signed by King and contained an account known as the Ann Bowles account.

18. On or about May 26, 1999, King again called Torres into Hildreth's office. King presented the same disciplinary form described in paragraph 17 to Torres; however, this time it has

been completed and other accounts had been added. On the disciplinary form, King accused Torres of working accounts that were either not charged-off or that belonged to other departments.

19. On May 27, 1999, Torres denied any wrongdoing and asked why he was being treated unfairly. Taking phone messages and routing calls pertaining to accounts that are either not charged-off or that belong to other departments is standard procedure in the Asset Management Unit, and specifically in Associates Home Equity Services.

20. On July 20, 1999, Torres met with Gary Finney ("Finney") in the Human Resources Department to complain about discrimination and unfair treatment. Finney told Torres that an investigation was an option, and that Finney would look into Torres's allegations. Torres subsequently met with Finney, and Finney assured Torres that Torres's record was clear and to not worry.

21. In Mid-August, 1999, Torres started working an account known as Pacifico Abendoja after Weason approved the account for Torres to work.

22. On September 30, 1999, King called a meeting with Torres and corporate auditor Pat Killeen ("Killeen"). Killeen questioned Torres about the Pacifico Abendoja account.

23. On October 1, 1999, King and Hildreth terminated Torres's employment. When Torres asked why he was being fired, Mr. King referred to the disciplinary report and the Pacifico Abendoja account. When Torres asked for a more specific reason why he was being fired, both King and Hildreth avoided eye contact and said nothing. When Torres asked who made such a harsh decision, Hildreth said, "Corporate did." Torres asked who exactly in the corporate office, Hildreth repeated, "Corporate, the corporation." After Torres asked again exactly who in the corporation, Hildreth said, "We. We did. We represent the corporation."

24. Within two weeks of Torres's termination of employment, Associates circulated a memorandum that set forth the Associates policy concerning how to handle accounts such as the Pacifico Abendoja account. Torres had not violated the procedures set forth in the policy memorandum.

25. Torres received many awards for his outstanding performance during his career at The Associates. In addition to cash and letters of commendation, Torres won several vacations for his outstanding performance to Hawaii, Florida, and Cancun, Mexico.

26. Torres's compensation included a salary and bonuses totaling approximately $100,000 per annum, life insurance, health insurance, and other employment benefits.

27. Torres performed his duties exclusively in Irving, Texas and Coppell, Texas.

28. After his discharge, Torres applied for unemployment compensation in the State of Texas to the Texas Workforce Commission ("TWC"). The TWC granted Torres's application for benefits on the grounds that his employer, Associates, discharged him for a reason other than misconduct.

29. Torres has sought comparable employment with other companies in Texas, but he has been unsuccessful to date.

30. Torres has endured much emotional pain and suffering as a result of Defendant's malicious and discriminatory conduct. Additionally, Torres has suffered the inconvenience of a protracted job search. Torres has also suffered mental anguish and a loss of enjoyment of life by reason of the uncertainty clouding his career and his fears concerning his ability to regain financial security for his wife and children.

### Count One– Race Discrimination Under Title VII

31. Torres realleges each and every allegation set forth in paragraphs 6 through 30 and

incorporates them by reference as if fully set forth herein.

32. Defendant discriminated against Torres on the basis of his race in violation of 42 U.S.C. § 2000e et seq. when it terminated Torres's employment.

33. As a result of Defendant's unlawful employment practice, Torres has suffered lost salary and employment benefits and he is thus entitled to an award of back pay.

34. Because Torres's reinstatement is not feasible, he is entitled to recover front pay for lost future compensation and benefits.

35. As a further result of Defendant's discriminatory employment practice, Torres will sustain future pecuniary losses, and he has suffered, and is continuing to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. Accordingly, Torres is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1981a.

36. At all times relevant to this action defendant acted with malice or reckless indifference to Torres's federally protected rights under Title VII. Accordingly, Torres is entitled to an award of exemplary damages pursuant to 42 U.S.C. § 1981a.

37. Torres is entitled to recover attorney fees and costs.

### Count Two–National Origin Discrimination Under Title VII

38. Torres realleges each and every allegation set forth in paragraphs 6 through 30 and incorporates them by reference as if fully set forth herein.

39. Defendant discriminated against Torres on the basis of national origin discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) when they terminated his employment.

40. As a result of Defendant's unlawful employment practice, Torres has sustained substantial lost salary and employment benefits and he is thus entitled to an award of back pay.

41. Because Torres's reinstatement is not feasible, he is entitled to recover front pay for lost future compensation and benefits.

42. As a further result of Defendant's discriminatory employment practice, Torres will sustain future pecuniary losses, and he has suffered, and is continuing to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. Accordingly, Torres is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1981a.

43. At all times relevant to this action defendant acted with malice or reckless indifference to Torres's federally protected rights under Title VII. Accordingly, Torres is entitled to an award of exemplary damages pursuant to 42 U.S.C. § 1981a.

44. Torres is entitled to recover attorney fees and costs.

### Count Three–Retaliation Under Title VII

45. Torres realleges each and every allegation set forth in paragraphs 6 through 30 and incorporates them by reference as if fully set forth herein.

46. Defendant discriminated against Torres in violation of 42 U.S.C. § 2000e et seq. when it terminated his employment soon after he complained about the discriminatory treatment exhibited by King.

47. As a result of Defendant's unlawful employment practice, Torres has sustained substantial lost salary and employment benefits and he is thus entitled to an award of back pay.

48. Because Torres's reinstatement is not feasible, he is entitled to recover front pay for lost future compensation and benefits.

49. Torres will sustain future pecuniary losses, and he has suffered, and is continuing to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

damages. Accordingly, Torres is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1981a.

50. At all times relevant to this action defendant acted with malice or reckless indifference to Torres's federally protected rights under Title VII. Accordingly, Torres is entitled to an award of exemplary damages pursuant to 42 U.S.C. § 1981a.

51. Torres is entitled to recover attorney fees and costs.

### Plaintiff's Demand For Jury Trial

Plaintiff, Jacinto Torres, asserts his rights under U.S. Const. Amend. 7 and demands a trial by jury on all issues, in accordance with Fed.R.Civ.P.38.

### Prayer

WHEREFORE, Plaintiff Jacinto Torres prays that upon final trial the Court enters judgment against Defendant granting the following relief:

1. Appropriate equitable relief including back pay and front pay for Torres's lost salary, bonuses, insurance, and other employment benefits as stated in Counts One, Two, and Three;

2. Compensatory damages for Torres's future pecuniary losses and for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as stated in Counts One, Two, and Three;

3. Exemplary damages as stated in Counts One, Two, and Three.

4. Prejudgment and postjudgment interest at the applicable legal rate until paid;

5. Costs of suit including reasonable attorney and expert witness fees;

6. All other legal and equitable relief which may be necessary and proper to fully redress Defendant's violations of Title VII.

Dated: August 16, 2000.

Respectfully submitted,

_____
**Andrew L. Jones**
Texas Bar No. 24012919
**Law Office of Andrew L. Jones, P.C.**
13250 Branch View Lane
Dallas, Texas 75234
(972) 481-8840
(972) 243-2666 (telefax)

ATTORNEY FOR PLAINTIFF

**Plaintiff's Original Complaint and Jury Demand - Page 9**